### JEAN BRANGER *v.* JEAN P. MANCIET.

IMPLIED GUARANTY IN LEASE.—A description in a lease of the leased premises as " a certain lot of land ＊ ＊ ＊ together with the improvements thereon, consisting of a building known and designated by the name of Hotel de Franco," does not constitute an implied guaranty on the part of the lessor that the hotel shall remain on the lot during the term.

COVENANT IN LEASE.—A covenant in a lease that the lessee shall during the term enjoy the premises without trouble from the lessor or any person whomsoever, extends merely to the lessor and the acts of parties claiming by title, and not to the tortious acts of strangers.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The defendant recovered judgment in the Court below, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Earl Bartlett*, for Appellant, argued that the lease being of a hotel, a building used for a particular business, that this, joined to the covenant that plaintiff should enjoy the premises

during the term, amounted to an implied guaranty by the lessor that a building of that description would be furnished by the landlord during the term ; and cited Taylor's Landlord and Tenant, Sec. 381 ; *Smith* v. *Manable,* 11 M. & W. 5 ; and 1 Car. & Mar. 479. He further argued that the express covenant in the lease bound the respondent to protect the appellant against the tortious acts of a third party, and that a covenant for quiet enjoyment might extend to all interruptions, legal or illegal, when there was an evident design evinced to protect the lessee against both, and that such design was evinced in this covenant ; and cited Taylor's Landlord and Tenant, Secs. 312, 313 ; *Southgate* v. *Chaplin Com.* 230 ; 10 Mad. 383 ; 1 Vermont, 175 ; 3 T. R. 584 ; 7 East. 116.

*Byrne & Freelon,* for Respondent, argued that there was no implied guaranty, and that cases where it had been held there was an implied guaranty were where the contracts were of a mixed nature, as for lodging, and a house with furniture. They also argued that the covenant in this lease did not amount to a covenant to repair in case of a destruction of the premises by the tortious act of a stranger ; and cited *Batterman* v. *Pierce,* 3 Hill, 171 ; *Gates* v. *Green,* 4 Paige, 354 ; *Philips* v. *Mathews,* 16 Mass. 237 ; *Fowler* v. *Burr,* 6 Mass. 62 ; *Hallett* v. *Wylie,* 3 John. 44 ; and *Howard* v. *Doolittle,* 3 Duer, 464.

By the Court, SAWYER, J. :

This is an action by the tenant against his landlord to recover the cost of repairing the buildings on leased premises partially destroyed by fire "occasioned by the act of an incendiary, and by some person other than said plaintiff, or said defendant."

No undertaking that the house upon the premises leased should continue to remain there during the term was implied from the fact that in designating the premises the lease described a certain lot of land, "together with the improvements thereon, consisting of a building known and designated by the name
79

of ' Hotel de France.' " (*Howard* v. *Doolittle*, 3 Duer, 465 ; *Sherwood* v. *Seamen*, 2 Bos. 130.)

The lease contained a covenant on the part of the lessor, that the lessee " shall and may, at all times during the said term hereby granted, peaceably and quietly have, hold and enjoy the said demised premises without any manner of let, suit, trouble or hindrance of or from the said party of the first part, his heirs or assigns, or any other person or persons whomsoever," and it is insisted that, under this covenant, the lessor was bound to protect the lessee against all manner of trespasses and malicious acts of strangers having no relation with the lessor and setting up no claim to the premises, and that the lessor was bound by the covenant to repair the building partially destroyed by fire set by an incendiary. But we think no such broad construction can be given to the covenant. It is not in the ordinary course of human transactions to contract generally for the protection of others against the crimes of all evil disposed persons, and it would be unreasonable to give the covenant in question so broad a signification. Besides, this is only the ordinary covenant for quiet enjoyment, containing no words not embraced in the long established form of that covenant, while some of the words in the old form are omitted ; and the construction of this covenant has long been settled by judicial decisions. The form of this covenant, as given in Rawle on Covenants for Title, is as follows :

"And that it shall be lawful for the said grantee, his heirs and assigns, from time to time, and all times hereafter, peaceably and quietly to enter upon, have, hold, occupy, possess and enjoy the said lands and premises hereby conveyed, or intended so to be, with their, and every of their, appurtenances, and to' have, receive and take the rents, issues and profits thereof, to and for his and their use and benefit, *without any let, suit, trouble, denial, eviction, interruption,* claim or demand whatsoever of, from or by him, the said grantor, or his heirs, or *any other person or persons* whomsoever."

This covenant contains all the words, or words of equiva-

lent import, contained in the lease in question, even the words
" or any other person or persons whomsover," upon which
appellant relies.   It is settled that this covenant does not
extend to tortious acts of strangers.   The doctrine, as now
established, is well stated by Rawle, as follows :

" There werd several old authorities which held that'a cov-
enant thus absolutely expressed extended to all interruptions
and disturbances whatsoever, whether lawful or tortious, and
although authority was not wanting in opposition to this doc-
trine, the law seems not to have been settled until the case of
*Hayes* v. *Bickerstaff*, Vaughan, 118 ; 2 Mod. 35.   That case
decided that the covenant, however generally expressed, must
be understood as applying merely to the acts of those claiming
by title.   For in the first place it would be unreasonable that
a man should covenant against tortious acts of strangers, which
he could not foresee or prevent ; secondly, the law gives the
covenantee a remedy against the wrongdoer ; thirdly, the cove-
nantee might thus have a double remedy and receive a double
compensation ; and fourthly, it would enable him to injure the
covenantor by colluding with a stranger to make a tortious
entry.   These unanswerable reasons have since been consist-
ently acquiesced in, and the rule in *Hayes* v. *Bickerstaff* has
long been recognized as settled law on both sides of the Atlan-
tic."   (Rawle on Cov. for Title, 184, *et seq.*, and authorities
cited in notes.)

No error appearing in the record, the judgment is affirmed.